## UNITED STATES v. KEMMERER et al.

(Circuit Court of Appeals, Third Circuit. June 11, 1925.)

No. 3336.

Shipping ⬯181—Charterer held not liable for demurrage.

Under a provision of a charter party that "time lost through * * * frost * * * that occasions a stoppage of delivery of coal to said steamer is not to be computed as part of the loading time," charterer *held* not liable for demurrage because of delay caused by ice which prevented the ship from docking at the loading place; neither party being in fault and the cargo having been at all times ready for loading.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Charles L. McKeehan, Judge.

Suit in admiralty by the United States against Mahlon S. Kemmerer and others, doing business as Whitney & Kemmerer. Decree for respondents (7 F.[2d] 184), and libelant appeals. Affirmed.

George W. Coles, U. S. Atty., and Joseph L. Kun, Asst. U. S. Atty., both of Philadelphia, Pa., and Arthur M. Boal, of Washington, D. C. (H. F. Birnbaum, of Washington, D. C., of counsel), for the United States.

Lewis, Adler & Laws, of Philadelphia, Pa. (Otto Wolff, Jr., of Philadelphia, Pa., of counsel), for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, the United States, owner of

the steamship Cœur d'Alene, filed a libel against Whitney & Kemmerer to recover demurrage on the latter's charter of such vessel. On final hearing, that court, in an opinion reported at 7 F.(2d) 184, held it was not entitled to recover, and from a decree dismissing its libel the United States took this appeal.

On due consideration had, we find no error, and the decree must be affirmed. The full statement of facts and the discussion of the law in the lower court's opinion leaves nothing to be said save by way of repetition. The case turns on the construction of the charter, which provides: "Lay days for loading, if required by the party of the second part, not to commence before January 26, 1920; otherwise, lay days to commence from time steamer is ready to load (or within 48 hours after readiness to load if delayed awaiting turn at berth), and master has given notice in writing of such readiness to the party of the second part or his agent." The vessel reported at Philadelphia at 10:30 a. m., January 27th; but, owing to the ice in the Delaware and the congestion of steamers caused thereby, it was not ordered to berth until February 5th, to which order her master properly answered he could not then dock on account of ice. Finally she was able to dock on the evening of February 10th, and the charterer, whose cargo had been available continuously, began loading promptly, and finished the same at 2:15 a. m., February 12th.

Neither party was in fault. The vessel's delay in reaching the berth was due to the ice and cold; the proofs being that there was extraordinary and continued cold, that the ice in the river looked like mountains, that the winds and sleet were extraordinary, and that, apart from these conditions, there would have been no delay or demurrage involved. The question then is: Who, under the charter party, shall bear the loss? On the part of the ship, it is contended that, having arrived and reported at 10:30 a. m., January 27th, her lay days ended at 10:30 a. m., February 4th. On the other hand, the charterers contend that, while they were at all times ready to load, the vessel could not, and did not, dock until February 10th, and that they were relieved from all liability for demurrage during the interim, January 27th to February 10th, by the charter's further provision that:

"Any time lost through riots, strikes, lockouts, or disputes between masters and men, at docks, or by reason of floods, frost, fogs, or storms, or by reason of accidents to ship's tackle, winches, equipment, or other disability of the ship which prevents her taking cargo, that occasions a stoppage of delivery of coal to said steamer is not to be computed as part of the loading time. In the event of any stoppage or stoppages arising from any of these causes and continuing for a period of six running days from the time when the steamer is ready to load, party of the first part may, at its option, terminate this contract, without prejudice, however, to any rights of action which it may have; if any cargo shall have been loaded prior to the exercise of this option, same shall be discharged at the risk and expense of the party of the second part."

We agree with the court's construction of this charter. This exempting clause is broad and inclusive in its terms, viz.: "Any time lost through * * * frost, fogs or storms * * * that occasions a stoppage of delivery of coal to said steamer is not to be computed as part of the loading time." "Any time lost" is not restricted to any period of time, nor is "a stoppage of delivery of coal" restricted to any particular kind or time of stoppage; and this view is confirmed by the fact that, under the last clause of the quoted section, it was within the right of this vessel, after arriving and reporting on January 27th, and finding itself absolutely balked by ice for the six ensuing days, it then had the right to throw up the charter and avoid further delay. Instead of doing so, the vessel stood by until the ice allowed her to berth, and the charterer, who was standing by with the cargo, then promptly loaded.

Under such circumstances, the charterer being in no fault, and having been ready at all times to load, and the delay of the vessel to berth being due to "time lost through * * * frost * * * that occasions a stoppage of delivery of coal to said steamer," it follows in the stipulation of the charter that such "time lost * * * is not to be computed as part of loading time." The clause was for the benefit of, and applied to, both parties; in favor of the steamer it relieved the vessel, which was ready for docking, from liability for not docking, and it relieved the charterer, who was ready to load, from demurrage for not loading. In other words, after the specified dominant cause, viz. frost, ceased to dominate, then, and then only, both parties were called on to act.

In so holding, we do not overlook the two cases which libelant says duplicate and control this case. We cannot agree with this contention. In the Coverdale Case, 9 App. Cas. 470, the vessel had duly docked and was ready to receive cargo, but the charterer did not have the cargo on hand to load. He sought to justify delay, not in loading, but in failing to get the cargo to the dock, on account of the freezing up of a canal and the provision of the charter, "Hands shirking work, or frosts or floods, or any other unavoidable accidents preventing loading." The situation was wholly different from the one before us. In the present case, the charterer had his cargo on hand to load, but the ship was not there to load; in Coverdale, the ship was at the dock, but the charterer did not have his cargo ready. It was the absence of cargo in the Coverdale Case that prevented loading, and to such loading the extract quoted was addressed. It is true, ice there prevented the charterer from getting his cargo ready, but it was the prevention of loading, not the prevention of cargo gathering, the charter provided for.

In that regard the court said: "Frost did not prevent the loading; what it did was to prevent the particular cargo which the charterer had provided from being brought to the place where the loading would not have been prevented." And again: "It seems to me that the exception applies only when the accident prevents the loading at the place of loading, and not where it prevents or retards the transit or conveyance of the cargo to the place of loading. The shipper was bound to have a full cargo at the place of loading, and he took upon himself all the risks consequent upon delay in transit. If he had had it there, it could have been loaded within the lay days, and no case of demurrage could have arisen." Without further comments, it suffices to say the Coverdale situation was wholly different from the present case, and the situations which led to a decree for demurrage in that case are not those here present.

The fact that in Watson v. Mysore, 15 Commercial Cases, 158, the alleged exemption causes, viz. scarcity of workmen and epidemics, were not established by the proofs, made the case one, not of the effects of alleged exemptions, but of nonexistence and nonproof of the exempting conditions, deprives that case of any special relation to the case before us.

After full consideration had, we affirm the decree below.